<u>**NOT FOR PUBLICATION**</u>

**FILED**

JAMES J. WALDRON, CLERK

**AUGUST 12, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |
|---|
| In Re:<br><br>**EDWARD LEV,**<br><br>                  Debtor. |
| **GARY S. JACOBSON,**<br>**CHAPTER 7 TRUSTEE,**<br><br>                  Plaintiff**,**<br>    v.<br><br>**BRUCE JACOBSON, JAY JACOBSON,**<br>**MICHAEL DRESKIN, JOHN KIM,**<br>**KYOUNGO KIM, EQUIFIN, INC.;**<br>**EQUINOX BUSINESS CREDIT CORP.**<br>**D/B/A EQUINOX FACTORS and**<br>**EXECUTIVE HEALTH MANAGEMENT,**<br>**INC.,**<br><br>                  Defendants. |

Case No.:   05-35847 (DHS)

Adv. No.:   06-02945 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Trenk DiPasquale Webster DellaFera Sodono
Richard D. Trenk, Esq.
Joshua H. Raymond, Esq.
347 Mt. Pleasant Avenue
West Orange, New Jersey  07052
***Counsel for Gary S. Jacobson, Chapter 7 Trustee***


Law Offices of Richard Kotkin
170 Pine Street
Montclair, New Jersey 07042
***Counsel for Defendant, Dr. Bruce Jacobson***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the court is a motion by the Chapter 7 Trustee, Gary Jacobson ("Trustee"), for partial summary judgment against Bruce Jacobson ("Defendant"). The Defendant is one of seven named defendants in an adversary proceeding in Edward Lev's ("Debtor") Chapter 7 bankruptcy proceeding.

The Debtor filed a petition for relief under Chapter 7, Title 11, of the United States Code, on August 11, 2005. The Trustee filed the adversary proceeding seeking to recover pre-petition transfers made to the Defendant and others on November 10, 2006. The pertinent counts relating to this motion are counts two and four. The second count alleged that the Trustee may avoid preferential transfers made by the Debtor to the Defendant pursuant to 11 U.S.C. § 547. The fourth count charged that transfers between the Debtor and Defendant were fraudulent under the New Jersey Fraudulent Transfer Act ("NJFTA"), N.J. Stat. Ann. § 25:2-26, and recoverable under 11 U.S.C. § 544.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (F). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. For any and all reasons stated hereafter, the Trustee's motion for partial summary judgment against the Defendant is denied.

**Statements of Facts and Procedural History**

A.   **Plaintiff Trustee's Statement of Facts**

Prior to filing his bankruptcy petition, the Debtor, a medical doctor, made numerous monetary transfers to the Defendant, a chiropractor. *See Certif. of Eugene Shalif* ("*Shalif Cert.*"), Ex. A, Ex. B (Feb. 26, 2009). Over the course of their business relationship, the Defendant provided assistance in the creation and incorporation of two of the Debtor's businesses, Encompass Medical Group ("EM Group") and Encompass Medical, P.C. ("EMPC"). *Def. Dep. Tr.* 26:1-15. The Defendant set up the two businesses in 2001 to expand the Debtor's medical practice. *Id.* at 63:1-11.

In addition to setting up the two businesses, the Defendant treated patients, handled billing, and performed general administrative tasks for the Debtor. *Id.* at 84:1-11. From the inception of the businesses, various monetary exchanges took place between the businesses and Defendant. *Shalif Cert.*, Ex. A. From November 16, 2004 to January 24, 2005, EMPC paid the Defendant $28,900. *Id.* at 3:8. These payments, made within the one-year preference period, were for debts the Defendant claimed he was owed for professional and administrative services rendered. *Id.* at 3:9-10. Six checks evidence these transfers, two of which were made payable to the Debtor, endorsed by both the Debtor and the Defendant on November 16, 2004 and then deposited into separate accounts – one into the account of Choonsoo Jacobsen ("Defendant's Wife") and one into the account of Comprehensive Neurological Services. *Id.* at Ex. B. An additional two checks were made payable to "Cash" and endorsed by the Defendant. *Id.* One check was deposited into the Defendant's Wife's bank account. *Id.* The other deposit cannot be located. *Id.* Finally, the last two checks were made payable to the Defendant, but the corresponding deposits were not found. *Id.* The Debtor also transferred $381,875 to the Defendant from April 30, 2002 to January 24, 2005.

4

*Id*. at 4:11-5:12; See also *id*. at Ex. A.  All of these transfers were in the form of checks made payable to the Defendant, the Defendant's Wife, Comprehensive Neurological Services, Chiromed Health Services, Cash, or the Debtor.  *Id*. at 5:13.  The checks were then deposited into bank accounts held by the Defendant, the Defendant's Wife, or his own medical practices.  *Id*.; See also *id*. at Ex. A, Ex. B.

In addition to any other administrative tasks the Defendant performed, he was given the authority in 2004 to sign checks on behalf of EMPC and signed the Debtor's name to the checks. Def. Dep. Tr. 398:16-399:8.  Yet, despite being paid and performing services for the Debtor's medical practices, the Defendant did not negotiate his compensation in advance.  Id. at 391:1-5. Finally, the Defendant also did not accurately reflect these payments on his 2002, 2003, and 2004 tax returns.  *Shalik Cert*. at Ex. C.

**B.      Defendant's Disputed and Additional Facts**

The Defendant was a personal friend of the Debtor and assisted the Debtor in the formation of two professional corporations.  *Def. Cert*. 2:3-4.  The Defendant also assisted the Debtor in expanding his medical practice to include additional medical services.  *Id*. at 2:4.  During the time that he helped form the corporations, the Defendant was seeing patients for the Debtor, handling administrative tasks, performing neurological evaluations and services, reviewing records, and writing reports. *Id*. at 2:5-6.  There was neither a written agreement between the Defendant and the Debtor referencing the services performed nor an executed contract regarding compensation. *Id*. at 2:8.

5

**Discussion**

**I.      Summary Judgment Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id*. At the summary judgment stage, the role of the court "is not to weigh the evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F.Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa*., 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massay*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp*., 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F.Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon School Dist.*, 673 F.Supp. 147, 151-*52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to judgment as a matter of law.

## II.    Preferential Transfers

Section 547 of the Bankruptcy Code provides the Trustee with the power to avoid preferential transfers by the Debtor that "enable a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and

he had participated in the distribution of the assets of the bankrupt estate." *Begier v. IRA*, 496 U.S.

53, 56-57 (1900) (quoting H.R. Rep. No. 95-595, p. 177 (1977)).  "If a preferential payment has

taken place, the law regards the transaction as a nullity, requiring that it be returned to the [Debtor's]

estate."  *In re Cockreham*, 84 B.R. 757, 761 (D. Wyo. 1988) (citation omitted).  The purpose of

allowing the trustee to avoid transfers is to guard against pre-petition acts that diminish the debtor's

assets and to ensure creditors receive a correctly proportionate distribution.  *Id.*; *see also Troisio v.*

*E.B. Eddy Forest Prods.  (In re Global Tissue L.L.C.)*, 106 Fed. Appx. 99, 102 (3d Cir. 2004).

Avoidable preferences are defined as:

[A]ny transfer of an interest of the debtor in property

(1) to or for the benefit of the creditor;

(2) for or on account of an antecedent debt owed by the debtor before
such transfer was made;

(3) made while the debtor was insolvent;

(4) made--
    (A) on or within 90 days of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of
    the petition, if such creditor at the time of such transfer was an
    insider; and

(5) that enables such creditor to receive more than such creditor would
receive if—
    (A) the case were a case under chapter 7. . . ;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent
    provided by the provisions. . . .

11 U.S.C. § 547(b).  The Trustee bears the burden of proving an avoidable transfer under section

547(b). 11 U.S.C. § 547(g).  "If the [T]rustee establishes these elements, the transferee may defeat

the trustee's claim by establishing that the transfer is not avoidable, pursuant to 11 U.S.C. § 547(c)."

*Marchand v. King (In re Lopresti)*, No. 03-48839, 2006 Bankr. LEXIS 2396, at *16 (Bankr. D.N.J. 2006); 11 U.S.C. § 547(g). Here, since the Trustee has moved for summary judgment, it is his burden to show that all the elements of an avoidable transfer have been met and that the Defendant does not have any defenses to the transfers.

Pursuant to Section 547(b)(4)(A), the Court will look at transfers made on or within ninety days before the petition was filed. Additionally, if the Defendant was an insider at the time of the transfer, the Court can extend this time period to include those transfers made between ninety days and one year of the petition date. 11 U.S.C. § 547(b)(4)(A). "The Code defines 'insider' as 'one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." 5 *Collier on Bankruptcy* ¶ 547.03, at 547-42 (Lawrence P. King Ed., 15th Ed. 2009) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 177, 312 (1977)). In making a finding, "[t]he consideration of insider status focuses on two factors: (1) the closeness of the relationship between the parties and (2) whether the transaction was negotiated at arm's length." *Id.* (citation omitted).

The Defendant at some point was given control over the Debtor's business finances. Deposition testimony shows that the Defendant had authority to sign the Debtor's name to checks as well as authority to sign checks on behalf of Encompass. *See* Def. Dep. 398:16-399:8, Feb. 8, 2006. The Defendant admitted to signing the Debtor's name to the checks. *See* Def. Dep. 398:2-5, 16-18. In addition, during his deposition, the Defendant testified that he was given full and complete access to all of Encompass's financial records. Def. Dep. 325:12-22. Based on this evidence, it is clear that the Defendant had control over the Debtor's business and finances and there is no genuine issue of material fact that the Defendant was an insider during the time of the alleged preferential

transfers.  Because the Defendant was an insider when the transfers took place, the Court will look

at the evidence as it relates to those transactions, which took place on or within one year of

August 11, 2005.  These transactions are:

| Check | Check Date | Amount |
|-------|-----------|--------|
| 1139 | 11/16/04 | $2,500 |
| 1140 | 11/16/04 | $9,000 |
| 1141 | 11/18/04 | $5,000 |
| 1147 | 12/3/04 | $4,900 |
| 1149 | 12/9/04 | $4,500 |
| 1162 | 1/24/05 | $3,000 |
| | TOTAL | $28,900 |

To find these transactions preferential, the payments must have been made while the Debtor

was insolvent.  11 U.S.C. § 547(b)(3).  "For the purposes of this section, the [D]ebtor is presumed

to have been insolvent on and during the 90 days immediately preceding the date of the filing of the

petition."  11 U.S.C. § 547(f).  The Defendant has not contested the Debtor's insolvency during this

time frame and the Trustee is therefore entitled to a presumption that those transactions on or within

90 days of the petition satisfy section 547(b)(3).  *See Collier* ¶ 547.03 at 547-38.  This presumption

does not apply, however, "with respect to transfers occurring more than ninety days before the filing

of the petition."  *Collier* ¶ 547.03 at 547-42..  Therefore, the Trustee must still establish that the

Debtor was insolvent on those dates in which the transfers were made outside of the ninety-day

window.

"A rough 'balance sheet' test determines insolvency; the Debtor is insolvent when its

liabilities exceed the fair value of its nonexempt assets."  *Collier* ¶ 547.03 at 547-38.  Here, evidence

shows that the Debtor's credit card balance owed to Chase Bank totaled $108,462.84 as of

December 31, 2003 and $158,085.90 as of December 31, 2004. See *Shalik Cert.*, 8:27. Also included in the evidence are tax returns, which show that the Debtor's total income was $61,670 in 2004, and his available income would be even less when payroll tax deductions are included. See *Shalik Cert*, 9:29. In addition, the Debtor testified that just prior to the one-year insolvency window, he had gone to the Defendant to beg for money because he was receiving threats from his creditors. Debtor Dep. 107:7-25, Oct. 21, 2005. There is sufficient evidence to show that the liabilities of the Debtor exceeded the fair value of his nonexempt assets. Therefore, there is no genuine issue of material fact that the Debtor was insolvent on or within one year of the petition and also that the Defendant was aware of this insolvency.

The Trustee has not established, however, that the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. 547(b)(2). "Although 'antecedent debt' is not defined by the Code, a debt is 'antecedent' if it is incurred before the transfer: the debt must have preceded the transfer." *Collier* ¶ 547.03 at 547-35. As part of the Defendant's defense, he claims the money was transferred to him as payment for services previously provided to the Debtor. However this is not, by itself, enough to establish that the payments were made for antecedent debt. In a summary judgment action, the burden is on the moving party. The Trustee has not come forward with sufficient evidence to show that the debt being paid was antecedent as opposed to in the ordinary course of business or a contemporaneous payment for services rendered. On the contrary, as part of the Trustee's fraudulent transfer claim, the Trustee argues that there is no evidence of any services being rendered by the Defendant. Thus, a major issue in this case is whether or not the Defendant was providing services to the Debtor and if he was, the extent of these services. As such, the Court finds that there is a genuine issue of material fact

concerning whether the transfers were for antecedent debt. This is a question better left for trial. At trial, witnesses may testify before the Court and findings of fact on this issue can then be made.

Finally, the Trustee has not established that there is no genuine issue of material fact that the Defendant cannot establish his defenses. The Trustee cannot avoid a transfer if it was "intended by the debtor and the creditor... to be a contemporaneous exchange for new value given to the debtor." 11 U.S.C. § 547(c)(1)(A). Nor can the Trustee avoid a transfer "to the extent the transfer was in payment of a debt incurred by the debtor in the ordinary course of business." 11 U.S.C. § 547(c)(2). These defenses are based on the Defendant's claim that he was being paid for services rendered. As the moving party, the Trustee has not established that the Defendant did not receive these payments as part of a regular legitimate business relationship between the Defendant and the Debtor.

The Trustee is correct to point out that the "creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section." 11 U.S.C. § 547(g). However, because the Trustee has brought this summary judgment motion, the Trustee must establish that the Defendant cannot prove his defenses. The question of why and exactly how the Defendant was receiving checks is a major issue in the case and should be decided at trial, where the Defendant will have the burden to prove defenses establishing that the transfers were proper and not avoidable.

### III.   New Jersey Fraudulent Transfer Act

The New Jersey Fraudulent Transfer Act (NJFTA) provides that:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

12

> b. Without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor. . . (2) intended to incur, or believed or reasonably should have believed the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. § 25:2-25. The court may infer actual intent by looking at the circumstances and giving consideration to the "badges of fraud," which provide in pertinent part:

> In determining actual intent. . . consideration may be given, among other factors to whether:
>
> a. The transfer or obligation was to an insider;
>
> . . . .
>
> c. The transfer or obligation was disclosed or concealed;
>
> . . . .
>
> e. The transfer was of substantially all of the debtor's assets;
>
> . . . .
>
> g. The Debtor removed or concealed assets;
>
> h. The value of the consideration received by the Debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> i. The Debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. . . .

N.J.S.A. § 25:2-26. The "'[b]adges of fraud' represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent." *Gilchinsky v. Nat'l Westminster Bank*, 159 N.J. 463, 476 (1992) (citing *Hassett v. Goetzmann*, 10 F.Supp.2d 181, 188 (N.D.N.Y. 1998). "The presence or absence of one factor is not conclusive. . . . The proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single factor [ ] may cast suspicion on the transferor's intent, the

confluence of several in one transaction provides conclusive evidence of actual intent to defraud." *Dobin v. Hill (In re Hill)*, 342 B.R. 183, 198 (Bankr. D.N.J. 2006) (citing *Gilchinsky*, 159 N.J. at 477 (other citations omitted)). The list of badges of fraud is not exhaustive and a court may look at other facts in making its determination. *Id.* at 198-99.

Here, the Trustee has claimed that there is no genuine issue of material fact as to the issue of actual intent because (1) the Defendant was an insider; (2) the Defendant concealed the transfers from the Debtor to him; (3) the fraudulent transfers were made with the intent to hinder, delay, or defraud; (4) the fraudulent transfers were for less than reasonably equivalent value; and (5) the Defendant did not give the Debtor reasonably equivalent value for the amounts that he removed from the Debtor's accounts. *Trustee Br.* 26-29.

The Court finds, however, that there are genuine issues of material fact regarding the Defendant's intent. First, while the Defendant admits that he was an insider at some point, there are issues as to whether the transfers were concealed and if so, how and by whom. There is voluminous evidence, including checks, which show that the transfers took place. *See Shalik Cert.*, Ex. A. An issue that will need to be addressed at trial is whether the Defendant's act of not reporting the transfers when filing his taxes shows that he concealed the *transfers*. Additionally, whether or not there was reasonably equivalent value provided in exchange for the transfers is a genuine issue of material fact. The Defendant is entitled to rely on his assertion that he received the payments for services rendered. Drawing all reasonable inferences in the Defendant's favor, his claim that a medical doctor performing procedures he performed would be entitled to the same payment creates an issue for trial. Whether or not these payments were in excess of what someone in his position would have received is a question better addressed at trial, rather than summary judgment. As the

evidence is shown at trial regarding the issues surrounding the "badges of fraud," the Court will be in a better position to decide intent and if, taken collectively, the Court may find that a fraudulent transfer took place.

### Conclusion

Genuine issues of material fact exist as to the allegations of preferential or fraudulent transfers and, for that reason, the Trustee's motion for partial summary judgment is denied. An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

/s/ *Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: August 12, 2009